UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HERMAN BIBBS, SR., ET AL.                                              CIVIL ACTION

VERSUS                                                                 NO. 10-82

HOUSE OF BLUES NEW ORLEANS                                             SECTION "B" (3)
RESTAURANT CORPORATION

ORDER

Before the Court is Plaintiffs' Motion, with Incorporated Memorandum in Support, for Reconsideration of Order Granting Defendant's Motion to Stay and Compel Arbitration [Doc. #51]. Attached to the motion is plaintiffs' Memorandum in Opposition to Defendant's Motion to Stay Proceedings and Compel Arbitration [Doc. #51-5]. Defendant opposes plaintiffs' motion to reconsider [Doc. #56].

On February 11, 2011, this Court stayed this matter until it had the opportunity to determine whether this matter should proceed to arbitration. [Doc. #37]. The Court set the rest of the motion – essentially, the motion to compel arbitration – for oral hearing on April 13, 2011. As of that date, no party had opposed defendant's motion.

After the Court granted defendant's motion to compel arbitration [Doc. #45], plaintiff filed the motion under submission here. For the following reasons, the Court denies the motion.

**I.      Background**

Plaintiffs filed a bare-bones complaint that references only the factual allegations in their charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). In his charge, plaintiff Herman Bibbs alleges that defendant House of Blues New Orleans Restaurant Corporation ("HOB" or "defendant") suspended him on January 10, 2001 and discharged him on January 14, 2008 for allegedly punching another employee, his wife. Plaintiff had worked for HOB since December 15, 1993. When he was discharged, Bibbs was an Operations Manager.

In her complaint, plaintiff Carla Bryant Bibbs alleges that HOB discharged her on January 20, 2008 for allegedly failing to report to work. She began work at HOB as a hostess and, at the time she was discharged, was a Club Supervisor. Plaintiff admits that her husband clocked her in at work and alleges that she was there but that her security card was not working properly. She alleges that another manager, Michael Holderby, had clocked her in on another date because of the faulty security card. She alleges that after 15 years, neither she nor her husband had any negative write-ups in their files. She claims that they were targeted for termination. Plaintiffs allege that they were told that they were both being terminated because she had not appeared on the video camera showing up for work.

Both plaintiffs filed charges of discrimination with the EEOC and received Right-to-Sue letters. Plaintiffs then filed the instant lawsuit. Both plaintiffs allege that HOB violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, in that plaintiffs were unlawfully subjected to disparate treatment and unlawfully terminated from employment on account of their race and, in Mrs. Bibbs' case, on account of her gender as well. Plaintiffs also assert claims under 42 U.S.C. § 1981.

**II.    The Parties' Contentions**

### A.     Plaintiffs

Plaintiffs argue that they were under the impression that the matter was stayed and that that was the reason they failed to oppose the motion to compel arbitration. Plaintiffs now attach their opposition to the motion for reconsideration.

Plaintiffs now argue that defendant failed to attach a complete, signed arbitration agreement to its motion to dismiss. Plaintiffs note that defendant's in-house counsel represented in the EEOC proceedings that it would be unable to produce an agreement to arbitrate signed by plaintiffs. Plaintiffs contend that defendant only now produces the "last" page of what defendant contends is an agreement to arbitrate. Plaintiffs argue that there is no explanation as to the chain of custody of the last pages, why there is no agreement to arbitrate from 1996 (when plaintiffs began to work for defendant), why plaintiffs would have signed an agreement three years later in 1999, or why defendant has failed to produce an alleged 2004 agreement to arbitrate. Plaintiffs assert that the complete, unsigned agreements to arbitrate attached to defendant's pleading differ in wording, format, font and content from the last pages signed by plaintiffs.

Noting that state law controls whether a valid agreement to arbitrate exists and the scope of its terms, plaintiffs contend that no valid agreement to arbitrate exists here. Defendant has failed to produce a whole and complete agreement. Pointing to parallel litigation in this Court, *Grant v. House of Blues New Orleans Restaurant Corporation*, Civ. A. No. 10-3161, Div. "2" (E.D. La.), plaintiffs assert that defendant has produced two different versions of what it claims to be the agreement, one with nine paragraphs and one with 14 paragraphs. Defendant has also produced 1996 and 1999 Handbook Acknowledgments that make a general reference to arbitration (though not a specific agreement) but no evidence that an agreement to arbitrate existed in 1996.

Plaintiffs point out that an agreement to arbitrate may be incorporated by reference into another written contract as long as the arbitration clause in the contract that is referred to has a "reasonably clear and ascertainable meaning." Plaintiffs argue that the Handbook Acknowledgments are not contracts and, even if they were, there is no reasonably clear and ambiguous reference to an arbitration agreement. Plaintiffs also submit in affidavits attached to their motion that defendant never provided them with a written agreement to arbitrate and dispute that they ever signed such an agreement.

### B.   Defendant

Defendant argues that there is no need for a complete, signed arbitration agreement in one document to bind plaintiffs. Defendant contends that a motion to reconsider can not be used to raise arguments that should have been raised in an earlier motion.

Defendant argues that plaintiffs' failure to oppose its motion to dismiss was unjustified. Defendant notes that plaintiffs' counsel represented that he was under the impression that the matter was stayed but also notes that plaintiffs' counsel asked for an extension of time within which to file his opposition and that the Court – at plaintiffs' request – re-set the hearing on the motion to dismiss on April 13, 2011. Plaintiffs also filed a motion to expedite consideration of their motion to continue the oral hearing on the motion to compel arbitration. Thus, defendant contends, plaintiff's counsel knew that the motion was under submission.

Defendant notes that plaintiffs do not deny their signatures on what it contends is "openly and obviously" the last page of an agreement to arbitrate. Defendant contends that it is irrelevant that it has produced no 1996 agreement to arbitrate because a 1999 agreement to arbitrate exists. Defendant distinguishes the *Grant* lawsuit in this Court by noting that there, the plaintiff had signed

a 2004 agreement in connection with a promotion that conditioned her employment on her agreement to arbitrate. Here, defendant notes, plaintiffs signed no agreement in 2004 similar to the one in *Grant*.

Defendant contends that plaintiffs have breached the confidentiality of the EEOC mediation process by pointing out that there, defendant's in-house counsel stated that defendant could produce no complete, signed agreement to arbitrate. Defendant contends that the signed, last page of Mrs. Bibbs's agreement was attached to defendant's EEOC position statement. Defendant notes that it has taken the position since the inception of this matter in the EEOC that arbitration is mandatory.

Defendant contends that plaintiffs submit no competent evidence with their motion to reconsider. Defendant argues that plaintiffs' affidavits are not verified and/or authenticated. Defendant asserts that the affidavits are unsigned and unsworn before the notary. Defendant contends that typing an "/s" and then plaintiffs' names at the bottom of the affidavits is improper. Defendant also argues that the e-mails attached to plaintiffs' motion are unsworn with no proper authentication. Defendant argues that even were the Court to consider the affidavits, they do not dispute plaintiffs' signatures. Defendant contends that plaintiffs must be aware of and read what they sign. The signed, last pages of the 1999 agreement repeatedly states that it is part of an agreement to arbitrate.

### C.   Plaintiffs' Reply

Plaintiffs argue that the Court should grant the motion to reconsider to correct a manifest error of fact and law and to prevent manifest injustice. Plaintiffs ask the Court to examine Magistrate Judge Wilkinson's opinion denying defendant's motion to dismiss in *Grant v. House of Blues New Orleans Restaurant Corporation*, Civ. A. No. 10-3161, Div. "2", Doc. #43, Order dated

April 27, 2011 (E.D. La.).  There, the Court denied the motion to dismiss because defendant had failed to produce a complete, signed agreement to arbitrate.

### D.    Defendant's Sur-Reply

Defendant argues that *Grant* is not dispositive here.  Defendant contends that *Grant* is inapposite because there, the Court concluded that a material issue of fact existed as to whether the plaintiff was subject to a 2004 arbitration agreement that had superceded the 1999 agreement.  Defendant also argues that the last page of the arbitration agreement in *Grant* did not mention arbitration, where here, the last page repeatedly mentions arbitration.

## III.   Law and Analysis

The Federal Rules of Civil Procedure do not formally recognize a "Motion for Reconsideration." Out of judicial necessity, the courts have developed an approach to evaluate such a motion.  In *Lavespere v. Niagara Machine & Tool Works, Inc.*, the court noted that the first inquiry involves determining exactly which federal rule most appropriately governs the motion.  *Lavespere*, 910 F.2d at 173, *abrogation on other grounds recognized by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994).  The United States Court of Appeals for the Fifth Circuit treats a motion for reconsideration as "either a motion 'to alter or amend' under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." *Id.*  The Fifth Circuit holds that, "if the motion is served within ten (10) [now 28] days of rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.*

As calculated according to Federal Rule of Civil Procedure 6(a)(2), plaintiffs filed their motion to reconsider within 28 days of the Order granting the motion to compel arbitration. Fed. R. Civ. P. 6(a)(2).  Thus, it will be treated as a Rule 59(e) motion to alter or amend.  Rule 59(e) motions

to alter or amend typically arise in connection with evidentiary materials or intervening changes in controlling law discovered after an adverse judgment. Courts have broad discretion to reopen matters under Rule 59(e) but must balance competing interests of "the need to bring litigation to an end and the need to render just decisions on the basis of all the facts." *Lavespere*, 910 F.2d at 174.

The court's discretion to reopen a matter under Rules 59(e) and 60(b) differ. Although motions to reconsider are typically reserved for admission of newly discovered evidence, a correction of "manifest error of law" may also justify relief. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Still, the court's interest in bringing litigation to an end compels reserving relief under this motion for the most deserving situations. Courts have consistently denied relief under Rule 59(e) where the moving party seeks only to reargue the same points without offering new evidence or new legal support.

"[T]he proper inquiry is whether the moving party has 'clearly establish[ed] either a manifest error of law or fact or . . . present[ed] newly discovered evidence.'" *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). "A motion to reconsider is 'not the vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of [the order]." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Finally, the Court considers "four grounds upon which a Rule 59(e) motion can be granted: (1) to correct manifest errors of law or fact on which judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law." *Peterson v. Cigna Group, Inc.*, No. Civ. A. 99-2112, 2002 WL 1268404, *2 (E.D. La. June 5, 2002).

Based on the foregoing factors, the Court finds it necessary to deny plaintiffs' motion. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, liberally favors arbitration and establishes a strong

federal policy that fosters enforcement of arbitration agreements. *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.,* 243 F.3d 906, 909 (5th Cir. 2001). As arbitration is a matter of contract, however, a party will not be required to submit a dispute to arbitration absent an express agreement to do so. *Pers. Sec. & Safety Sys. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). To ascertain whether such an express agreement exists, the Court considers (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* Doubts as to whether an agreement expressly provides for arbitration are usually resolved in favor of arbitration. *Id.* The Court looks to ordinary state-law principles of contract interpretation to decide whether the parties agreed to arbitrate the dispute in question. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). If a valid agreement to arbitrate exists, the Court then determines whether other legal constraints foreclose arbitration. *Id.*

Here, the Court finds that there is a valid Agreement to Arbitrate that plaintiffs signed on July 21, 1999 and July 22, 1999, respectively. (Def.'s Mem. Supp. Mot. Stay & Compel Arbitration, Ex. 1). Plaintiffs' central argument here is that defendant failed to attach a complete, signed agreement to arbitrate to its motion. Thus, plaintiffs argue, there is no valid agreement to arbitrate, and plaintiffs did not waive their right to file this civil suit.

Attached to defendant's original motion to compel arbitration is an Agreement to Arbitrate unsigned by plaintiffs. (*Id.*, Ex. 2-C. Also attached to defendant's original motion are the last pages of the aforementioned agreement to arbitrate *signed* by plaintiffs. (*Id.*, Exs. 1-A & D).[1]  The

---

[1] In their affidavits attached to their opposition to the motion to stay and to compel arbitration, plaintiffs contest every signature on every exhibit that defendant attaches to its motion. Not only do they contest their signatures on the last page of the agreements to arbitrate but they contest their signatures on each and every one of the exhibits, including their signatures on the forms that verify that they received the employee handbook. The Court finds such self-serving affidavits insufficient to overcome the evidence submitted

complete agreement to arbitrate and the signed last pages of the agreement to arbitrate are word-for-word identical, although the Court recognizes that the font and size of the lettering is different. The final paragraph of the agreement, directly above the signatures of plaintiffs reads:

> By signing this agreement, you acknowledge that you have carefully read this Agreement to Arbitrate and understand its contents. You acknowledge that you are entering into this agreement voluntarily, with the understanding that this agreement constitutes a waiver of any right to have disputes covered by this agreement determined by a court or jury.

(*Id.* Exs. 1-A & D at ¶ 9).

While the law is scarce on this issue, the Court's review of the case law has revealed at least two opinions whose reasoning the Court finds instructive. In *Gray v. Rent-a-Center West, Inc.*, the plaintiff alleged that he had never received anything other than the last page of the agreement to arbitrate that he had signed. No. CV 06-1058, 2007 WL 283035, *5 (D. Or. Jan. 24, 2007). There, the agreement provided:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THE AGREEMENT[.]
> I UNDERSTAND THAT BY SIGNING I AM GIVING UP MY RIGHT TO A

---

properly by defendant. *Cf. Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (finding self-serving statements insufficient to create a triable issue of fact); *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (concluding that self-serving statements were insufficient to overcome summary judgment, particularly when faced with "overwhelming evidence" in opposition); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for the plaintiff when defendant's only evidence in opposition was his own "self-serving allegations"); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (explaining that a "conclusory, self-serving statement" by defendant was insufficient to create a triable issue of fact). Indeed, the Court finds it highly suspect that defendant – an international corporation – would have hired plaintiffs without having them sign anything.

Additionally, the Court questions the authenticity of the affidavits. Plaintiffs signed the affidavits "electronically," with a "/s/" and then their typed names. While the Court allows *attorneys* to sign documents in such a fashion for the purposes of filing electronically, the Court has found no federal or local rule or case law that would allow an affidavit to be signed in such a fashion. With the validity of plaintiffs' signatures such a hotly-contested issue on their part, the Court wonders why plaintiffs would not have signed the affidavits in true form.

JURY TRIAL. . . .

*Id.*[2]  Noting that under Oregon law, a party is "'presumed to be familiar with the contents of any document that bears the person's signature,'" the court held that the plaintiff's allegation that he had not received the preceding pages was no defense to enforcement of the agreement. *Id.*

The court held similarly in *DeBono v. Washington Mutual Bank*. No. 05 Civ. 10333, 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006). There, the plaintiff alleged that he had received and signed only the third page of the three-page arbitration agreement. *Id.* at * 2. The court held that such an allegation did not defeat the agreement to arbitrate's enforceability. Specifically, the court found that even had plaintiff received only the last page of the agreement, he was bound by the conditions of the agreement once he signed it. *Id.* Like the *Gray* court, the *DeBono* court noted that under New York law, absent fraud, duress or other wrongful conduct, a party who signs a written contract is conclusively presumed to know its contents and assent to them. *Id.*

The underlying reasoning in these two cases supports the Court's conclusion here. In the aforementioned opinions, the plaintiffs alleged that they had never seen other than the last pages of the agreements to arbitrate, and, thus, the agreements were unenforceable. Here, plaintiff contends that the submission of only the final page of the agreement to arbitrate renders the arbitration agreement unenforceable. The Court rejects the argument. Even had plaintiffs received and signed only the last pages of the agreement to arbitrate, they are presumed to have read and consented to

---

[2]  The Court recognizes that in *Gray*, the court also noted that because the last pages were numbered, such a fact clearly indicated to the plaintiff that the document was a multi-page document. *Id.* at *5. The Court finds such a factual distinction irrelevant to the situation here. The last pages here, signed by plaintiffs, begin with paragraph six. Had plaintiffs received or signed only the last pages, the fact that the page began with paragraph six would surely have put them on notice that five other paragraphs preceded it.

10

the entire terms of the agreements. It is well-established Louisiana law that "a party signing a contract is presumed to have consented to its contents, and cannot avoid his obligations by contending that he did not read or fully understand it. A signature to a contract is not a mere ornament." *Rao v. Rao*, 927 So. 2d 356, 367 (La. Ct. App. 2005) (citing *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters*, 837 So.2d 11, 24 (La. Ct. App. 2002)). As noted above in footnote one, the Court gives short shrift to plaintiffs' self-serving affidavits that they contest the validity of their signatures on the documents here. Given the federal policy in favor of arbitration, the complete agreements to arbitrate and the plaintiffs' signatures on the last pages of the agreements to arbitrate, the Court finds no need to revisit its earlier ruling.[3]

The Court also again finds that the dispute in question falls within the scope of the Agreement to Arbitrate. The "Scope of Agreement to Arbitrate" provides that the agreement covers "any claims for employment discrimination or harassment under any federal or state law. . . ." (Ex. 3, attached to Def.'s Mem. Supp.). A review of plaintiffs' complaint reveals that plaintiffs sue defendant under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* [Doc. #1 at ¶ 1]. Plaintiffs allege claims for disparate treatment [*see id.* at ¶¶ 17-18] and discriminatory discharge [*see id.* at ¶¶ 19-20]. These claims by their very nature fall squarely within the scope of the

---

[3] Plaintiffs ask the Court to agree with another division of this Court. In *Grant v. House of Blues New Orleans Restaurant Corp.*, Civ. A. No. 10-3161, Div. "2" (E.D. La.), the Court held that the same documents submitted by the defendant there that defendant submitted here, coupled with the plaintiff's allegation that she did not remember signing the document, was insufficient to compel arbitration. *Grant*, Civ. A. No. 10-3161 [Doc. #43 at pp. 12-14]. Referring to the signed last page of the agreement to arbitrate in that case, the Court held that "[t]his single page attributable to Grant says nothing about arbitration." *Id.* at p. 13. This Court respectfully disagrees. Paragraph nine of the page that Grant signed is identical to paragraph nine quoted above, *supra* at p. 9, and clearly not only mentions arbitration but denotes that it is the final page of an arbitration agreement.

arbitration agreement.

**IV.    Conclusion**

Accordingly, and for the reasons outlined above,

**IT IS ORDERED** that Plaintiffs' Motion, with Incorporated Memorandum in Support, for Reconsideration of Order Granting Defendant's Motion to Stay and Compel Arbitration [Doc. #51] is DENIED.

New Orleans, Louisiana, this 13th day of May, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**